UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHELLE GOMEZ BEREZOWSKY, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-03496 |
| | § | |
| PABLO ANGEL RENDON OJEDA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.     BRIEF OVERVIEW**

This case involves a petition for the return of a child to the country of Mexico, pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Convention") and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 *et seq*. Having carefully reviewed the parties' submissions and the evidence, this Court finds that the child was wrongfully removed from Mexico and ORDERS his immediate return to that country.

The petitioner, Michelle Berezowsky Gomez ("the petitioner") and the respondent, Pablo Angel Rendon Ojeda ("the respondent"), who are both Mexican nationals and never resided permanently in the United States, are the parents of a three-year old child (the "child"). The child was born in the United States on May 31, 2009, and lived here with the petitioner until October 7, 2011, when the respondent, pursuant to a Texas state court order that designated Mexico as the child's primary residence, moved with him to Mexico. The petitioner, who had been attending school in the United States, returned to Mexico on October 18, 2011. The child has resided in Mexico from October of 2011 until November 1, 2012, when the respondent traveled to the United States with him.

The petitioner has petitioned this Court under the Convention, claiming that on or about October 11, 2012, the respondent abducted the child from preschool in Mexico City and successfully left Mexico for Texas where the child remains. The petitioner claims that she did not consent or acquiesce to the removal of the child from Mexico to the United States. However, the respondent claims that he did not violate the Convention.

On December 18, 2012, the Court took possession of all the passports issued in the child's names and ordered that the child not be removed from the jurisdiction of the Court. On December 20, 2012, the Court issued a temporary order, setting parameters for parental access to the child pending a full hearing.

## II. PROCEDURAL AND FACTUAL FINDINGS

A hearing was held in this Court on January 8 and 9, 2013. Based on all the evidence, the Court makes the following procedural and factual findings.[1]

The petitioner and the respondent are both Mexican nationals. They met while residing in Mexico, are not citizens of the United States, do not own real property in the country, and do not have immigration status that allows them to permanently reside here. Although the parties were never married and never lived in the United States together, the petitioner, who was in the United States at the time, gave birth to a child on May 31, 2009. After the birth of the child, the petitioner, who was attending school in the United States, lived in Texas with the child until the child was returned to Mexico with the respondent on October 7, 2011.[2]

---

[1] The Court heard testimony from the petitioner and her expert witness on Mexican law, David Lopez. The Court also heard testimony from the respondent and his own expert on Mexican law, Francisco Pena. The parties also submitted multiple exhibits to the Court.

[2] From July 29 to August 3, 2010, the petitioner returned to Mexico in order to obtain her student visa and the child stayed with the petitioner's mother in Texas during her absence.

On December 11, 2009, the respondent filed a suit for acknowledgment of paternity in the 24th Family Court in Mexico City, Mexico.[3] However, on February 17, 2010, the respondent filed a petition to adjudicate parentage in the 410th District Court of Montgomery County, Texas (the "Texas state court") where the petitioner was living with the child. After a jury trial, the Texas state court entered an amended final order on October 21, 2011 (the "Texas order"), establishing the petitioner and the respondent as "joint managing conservators" and awarding them joint parental rights. Although the Texas order gave the respondent the right to determine the residence of the child, it ordered that the "primary residence of the child be relocated and redistricted to" either one of three places in Mexico: (1) Delegacion Coyoacan, Distrito Federal; (2) Delegacion Tlaplan, Distrito Federal; and/or; (3) Cuernavaca, Morelos. The Texas order further required that each parent obtain the consent of the other before traveling outside of Mexico with the child. The Texas order reflects that the respondent's residence would be Cuernovaca, Morelos, in Mexico, and the petitioner's residence would be Mexico City, Mexico, after October 18, 2011. The respondent traveled to Mexico with the child on October 7, 2011, and the petitioner returned to Mexico on October 18, 2011.[4]

While residing in Mexico, the parties filed multiple suits in several Mexican courts. Of course, the respondent's original paternity suit filed on or about December 11, 2009, in the 24th Family Court in Mexico City was still pending. However, after the petitioner and the respondent returned to Mexico in October of 2011, the petitioner filed a suit in the 7th Family Court in

---

[3]While the parties proffer competing allegations regarding why the suit was not pursued, such reasons are not relevant for this Court's purposes.

[4]Although the Texas order required the child to live in Mexico, it appears that the petitioner was not aware that the respondent was taking the child to Mexico on October 7, 2011. Indeed, in an October 7, 2011, email, apparently from the respondent's trial attorney to the petitioner's attorney, the respondent's attorney indicated that the respondent and the child were residing in Mexico and that the respondent had "no intention" of returning to Montgomery County, Texas. During the hearing before this Court, the respondent admitted that he represented to the Mexican courts that his residence was in Mexico.

Cuernavaca, seeking to terminate the respondent's parental rights as established by the Texas state court. While the petitioner experienced limited success in that she was granted exclusive parental rights, that success was rebuffed by a Mexican appellate court when the respondent appealed the case.

In the meantime, the respondent was also filing petitions in both Mexican and Texas state courts. The respondent returned to the Texas state court and sought injunctive relief and modifications of his custody rights with the child. However, the litigation in Mexico was not abated and it was during that time that the respondent successfully appealed and nullified the orders of the 7th Family Court in Cuernavaca. That suit was then consolidated into the 24th Family Court of Mexico City where the petitioner was granted exclusive parental rights and rights of possession to the child.

Because the outcomes of the proceedings proved unfavorable to the respondent, he unsuccessfully moved to dismiss the case in the 24th Family Court of Mexico City. Undeterred, the respondent filed suit in the 11th Family Court of Mexico in September of 2012 to enforce the orders of the Texas state court. Using fictitious names for himself and the petitioner and failing to mention the order of the 24th Family Court that had granted the petitioner exclusive parental rights, the respondent successfully secured an order permitting him to have immediate possession of the child.

The order of the 11th Family Court purported to domesticate the orders of the Texas state court but there is no indication in the record that the respondent followed the proper procedure to do so. Moreover, the order of the 11th Family Court, which noted that it was an "emergency measure," did not explicitly terminate the petitioner's rights of custody and the respondent

acknowledged during the hearing before this Court that he never filed a suit to terminate the petitioner's rights in Mexico.

Based on the order of the 11th Family Court of Mexico, the respondent proceeded to the child's school on October 11, 2012, and seized the child.[5] Afterwards, the respondent crossed the border from Mexico into the United States, without permission from the petitioner, giving rise to the Amber alert that was issued by the Mexican officials. Subsequently, the 24th Family Court voided the orders of the 11th Family Court based on, *inter alia*, the fact that the respondent had obtained the orders using fictitious names and because it was contrary to the order of the 24th Family Court that had granted the petitioner exclusive parental rights.[6]

### III. CONTENTIONS OF THE PARTIES

#### A. The Petitioner's Contentions

The petitioner contends that the Texas court (Montgomery County) lost jurisdiction over the child because the child and both parents moved to Mexico in October of 2011, and because the court specifically designated Mexico as the child's place of residence. The petitioner argues that she has proven the required elements for "wrongful removal" under the Convention by a preponderance of the evidence, namely that: (1) the child habitually resided in Mexico at the time of the removal; (2) she has rights of custody under Mexican law; and (3) she was exercising those custody rights when the child was removed to the United States. Regarding the first prong, the petitioner elaborates that, at the time of the removal by the respondent, the child had resided

---

[5] The respondent admitted at the hearing that he did not file a petition in Mexico to terminate the petitioner's rights under Mexican law.

[6] The respondent contends that his exhibits 19 and 19A reflect that the order of the 24th Family Court that revoked the order of the 11th Family Court has been stayed. However, according to the petitioner's expert on Mexican law, the original Spanish version of the Mexican document does not support the petitioner's assertion. The Court finds the testimony of the petitioner's expert persuasive, but the Court is of the opinion that it need not decide whether the order of the 24th Family Court was stayed on appeal because, irrespective, the petitioner still has rights of custody.

in Mexico for over one year, the Texas court order restricted the child's primary residence to Mexico and both parents also resided in Mexico. Concerning the second prong, the petitioner asserts that, not only does she have rights of custody under Mexican law, but the last valid Mexican court order held that she was the only recognized parent in Mexico because the respondent was not listed on the child's birth certificate. Finally, as to the third prong, the petitioner argues that she regularly exercised her rights of custody on a daily basis as the child's primary caretaker.

### B. The Respondent's Contentions

The respondent argues that the Texas court never lost jurisdiction over the child and that all the orders of that court, including the ones issued in January and February of 2012 granting him full conservatorship of the child, are valid. He contends that Mexico was not the "habitual residence" of the child because he and the petitioner never shared the intention that Mexico was to be the child's habitual residence. He also argues that pursuant to the Texas court orders and the latest Mexican court order, he has superior parental rights and, as such, did not wrongfully remove the child from Mexico when he traveled with him to the United States. Lastly, the respondent argues that returning the child to Mexico would expose him to a grave risk of harm because the petitioner has demonstrated an intention to withhold the child from him and she may flee to other countries with the child.

### IV. LEGAL ANALYSIS

If a child has been "wrongfully removed or retained within the meaning" of the Convention on the Civil Aspects of International Child Abduction (the "Convention"), the child shall be "promptly returned" to the home State. *Abbott v. Abbott*, 130 S.Ct. 1983, 1989-1990 (2010). A removal or retention is wrongful when: (1) "it is in breach of rights of custody

attributed to a person . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention;" and (2) "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." Convention art. 3. Therefore, to establish her claim, the petitioner must prove the following elements by a preponderance of the evidence: (1) the respondent removed or retained the child somewhere other than the child's habitual residence; (2) the removal or retention violated the petitioner's "rights of custody" under the habitual residence nation's laws; and (3) at the time of removal or retention, those rights were actually being exercised. *See Larbie v. Larbie*, 690 F.3d 295, 307 (5th Cir. 2012).

Moreover, the Court is "not bound to order" the return of the child if the party opposing the return establishes, *inter alia*, that "there is a grave risk that [the] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Convention art. 13 (b). The party opposing the return must establish such a defense by "clear and convincing evidence." *Sealed Appellant v. Sealed Appellant*, 394 F.3d 338, 343, 346 (5th Cir. 2004).

The Court is of the opinion that the petitioner has satisfied all three elements by a preponderance of the evidence and that the respondent has failed to establish his claimed defense by clear and convincing evidence.

**A.     Habitual Residence**

The petitioner claims that the child's habitual residence is Mexico because he lived there for over a year prior to his removal to the United States. Moreover, she argues that the Texas court order specifically designated Mexico as the child's primary residence. The respondent, on

the other hand, contends that the focus should be on the intent of the parties and that the parties never intended that Mexico be the child's habitual residence.

Under either test advocated by the parties, the Court finds that Mexico was the child's habitual residence. The Fifth Circuit has recently joined "the majority" of Circuits that "have adopted an approach that begins with the parents' intent or settled purpose regarding their child's residence." *Larbie*, 690 F.3d at 310. This approach does not ignore the child's experience, but rather gives greater weight to the parents' subjective intentions relative to the child's age. *Larbie*, 690 F.3d at 311. In those cases, the threshold test is whether both parents intended for the child to "abandon the [habitual residence] left behind." *Larbie*, 690 F.3d at 312. Absent shared intent, "prior habitual residence should be deemed supplanted only where 'the objective facts point unequivocally' to this conclusion." *Larbie*, 690 F.3d at 311.

Although the child was born in the United States, the facts establish that the parents intended to make Mexico the child's habitual residence. Specifically, the petitioner and the respondent are both Mexican nationals, they met while residing in Mexico, they are not citizens of the United States, do not own real property in the country, and do not have immigration status that allows them to permanently reside here. Moreover, the respondent moved the child to Mexico pursuant to a Texas court order that designated Mexico as the child's place of residence. In the Texas order, both parents listed Mexico as their place of residence. The respondent admitted, and the evidence establishes, that he represented to the Mexican courts that his residence was Mexico. In other words, the evidence establishes that neither parent has meaningful or deep-rooted ties to the United States. Moreover, the child resided in Mexico for approximately thirteen months and was attending school there before the respondent removed

him to the United States. Therefore, based on these undisputed facts, the Court concludes that Mexico was the child's habitual residence.[7]

### B. The Removal Was in Breach of the Petitioner's "Rights of Custody"

The Court holds that the respondent's removal of the child to the United States was a breach of the petitioner's "rights of custody" under both the laws of Mexico and Texas.

The Convention defines "rights of custody" to "include rights relating to the care of the person of the child, and, in particular, the right to determine the child's place of residence." Convention art. 5. The Supreme Court encourages a broad reading of the "rights of custody." *Abbott*, 130 S.Ct. at 1991. The petitioner is not required to have sole or exclusive custody over the child and, in fact, the Convention recognizes that custody rights can be "decreed jointly or alone." *Abbott*, 130 S.Ct. at 1991. Notably, the Convention "does not speak simply of 'custody,' but of 'rights of custody,'" and those rights are "broadly defined." *Altamiranda Vale v. Avila*, 538 F.3d 581, 586 (7th Cir. 2008).

Whether the petitioner's rights of custody have been breached must be determined based under the "law of the State in which the child was habitually resident." Convention art. 3; *Abbott*, 130 S.Ct. at 1990-1997 (the court must look to the laws of the State of habitual residence to determine breach of rights of custody); *Larbie*, 690 F.3d at 307 (whether rights of custody were breached must be established under the "habitual-residence nation's laws"); *see also Barr*

---

[7]*Larbie*, upon which the respondent relies, is distinguishable on its facts. In *Larbie*, the child's mother petitioned for the child's return from the United States to the United Kingdom. The Fifth Circuit held that the parties had intended to make the United States the child's habitual residence because, *inter alia*, the father, an officer in the United States Air Force, was a naturalized citizen of the United States, the father had sponsored the mother for a green card and the mother had a temporary work permit in the United States. The parents, who were married, lived in the United States together, and, after divorce proceeding started, the father consented to the mother taking the child to the United Kingdom only as a temporary measure because he was deployed in Afghanistan and only at the suggestion of the Texas state Court. *See Larbie*, 690 F.3d at 298-304, 311-312. Here, by contrast, all the facts establish that the parents, who had no real ties to the United States, intended to make Mexico the child's habitual residence. This fact is further supported by the amended final judgment entered by the 410th District Court of Montgomery County, Texas.

*v. Barr*, No. H-11-337, 2011 WL 797664, at *3 (S.D. Tex. Feb. 28, 2011)].[8] Having earlier determined that Mexico was the child's habitual residence prior to his removal (Section A, *infra*), this Court shall now determine whether the petitioner's "rights of custody" were breached under Mexican law.

As heretofore noted, the order of the 24th Family Court of New Mexico gave the petitioner full and exclusive parental rights over the child. Moreover, this Court finds persuasive the testimony of David Lopez, an expert in Mexican law, that as the sole parent listed on the child's birth certificate, the petitioner was the only recognized parent in Mexico and no order of any Mexican court ever revoked her parental rights. Although the respondent obtained an order from the 11th Family Court that gave him rights of possession of the child, that order did not terminate the petitioner's parental rights. Preliminarily, the respondent, as another Mexican court subsequently found, used fictitious names to file the suit that resulted in the favorable order and failed to mention the prior unfavorable order against him from the 24th Family Court. Therefore, this Court is not obliged to give substantial weight to an order that was apparently obtained, at the very least, through misrepresentations. *Cf. Royal Bank of Canada v. Trentham Corp.*, 665 F.2d 515, 518 n.6 (5th Cir. 1981) (noting that a foreign judgment need not be recognized if it was obtained by fraud) (citations omitted).[9]

---

[8]Since the Convention and the case law make it clear that the analysis of whether rights of custody were breached must be based on the laws of the State of habitual residence, Mexico, this Court is of the opinion that the orders of the 410th Court in Montgomery County, Texas, are not crucial in determining whether the petitioner's rights of custody were violated under Mexican law. There is no evidence that the respondent had the final Texas court order from October 21, 2011, properly domesticated in Mexico or that any valid Mexican court order properly adopted the Texas order in determining the parties' parental rights in Mexico.

[9]Moreover, although the order of the 11th Family Court in Mexico purported to domesticate the orders of the Texas state court, there is no evidence in the record that the respondent followed the proper procedure to domesticate the Texas orders in Mexico. More importantly, as will be discussed, the Texas suits that resulted in the latest Texas orders modifying the petitioner's parental rights were not properly served under the Hague Service Convention and violated the Due Process Clause of the federal Constitution; thus, the latest Texas orders are unenforceable. In other words, the 11th Family Court of Mexico adopted Texas orders that were unenforceable. Given these additional concerns with the order of the 11th Family Court, it is afforded little or no weight by this Court.

In any event, the order of the 11th Family Court, which noted that it was an emergency measure, never expressly revoked the petitioner's rights of custody. In fact, at the hearing before this Court, the respondent acknowledged that he never filed any suit in Mexico to terminate the petitioner's parental rights.[10] Therefore, this Court concludes that, notwithstanding the order of the 11th Family Court, at the very least, under Mexican law, the petitioner has shared or joint rights of custody with the respondent. This finding is consistent with the Supreme Court's encouragement to give an expansive reading to the rights of custody under the Convention. *See Abbott*, 130 S.Ct. at 1991 (noting that the Convention fosters a "broad definition" of the "rights of custody"); *see also Altamiranda Vale*, 538 F.3d at 586 (rights of custody are "broadly defined"). The respondent breached the petitioner's rights of custody when the child was removed to the United States without the petitioner's permission or consent.

The respondent appears to rely heavily on orders of the 410th Court in Texas, from January and February 2012, to support his argument that he did not breach the petitioner's rights of custody because those orders changed the petitioner's parental rights, essentially nullifying them. However, the Convention and case law make it clear that a determination regarding the breach of rights of custody must be made under the laws of the State of habitual residence, in this case Mexico. *See* Convention art. 3; *Abbott*, 130 S.Ct. at 1990-1997 (the court must look to the laws of the State of habitual residence to determine breach of rights of custody); *Larbie*, 690 F.3d at 307 (whether rights of custody were breached must be established under the "habitual-residence nation's laws"). Therefore, the Texas state court orders, unless properly domesticated

---

[10]Even if the 11th Family Court in Mexico had given the respondent a right of possession of the child, it never specifically terminated the petitioner's full parental rights. Moreover, the court finds persuasive Mr. Lopez's expert testimony that, under Mexican law, rights of possession are separate and apart from rights of custody and giving rights of possession to one parent does not terminate the rights of custody, or parental rights, of the parent who is not in possession of the child.

in Mexico and adopted by a Mexican court with proper jurisdiction to do so, are of no consequence in the determination of the petitioner's rights of custody under Mexican law.

The Court is also of the opinion that, under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), the 410th District Court of Montgomery County, Texas, that granted rights of custody to the petitioner and the respondent, lost "exclusive continuing jurisdiction" when, pursuant to its own order, the parents not only moved to Mexico with the child, but established Mexico as the child's residence. In fact, the papers filed by both parties in Mexico as well as the orders of the Mexican courts establish that the petitioner, the respondent, and the child reside in Mexico; none of the parties resided in Texas. *See* Tex. Fam. Code § 152.202 (a)(2) (a Texas court which has made a custody determination has exclusive continuing jurisdiction over the determination until "a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state"); *In re Lewin*, 149 S.W.3d 727, 736-737 (Tex.App.-Austin 2003, no pet.) (Texas lost exclusive continuing jurisdiction when a Canadian court, which is considered a court of another State, determined that all the parties and the child did not presently reside in Texas).[11] Since the Texas court no longer had exclusive jurisdiction over the parties, it could not modify its final amended final order from October 21, 2011, without both parties being before it. Hence, all its subsequent orders from January and February of 2012 are a nullity. *See In re Lewin*, 149

---

[11]While the mere fact that the parties have moved from Texas will not deprive a Texas court of continuing exclusive jurisdiction (*In re Lewin*, 149 S.W.3d at 736-737), here, it is clear that based on all the evidence, the parties not only moved from Texas, but were "residing" in Mexico when the Texas court modified the October 21, 2011, amended final order.
   Moreover, a finding that Mexico had jurisdiction after all the parties moved and resided there is consistent with the purpose and spirit of the UCCJEA and the Convention to avoid "conflicting jurisdiction and relitigation of child custody issues." *In re Lewin*, 149 S.W.3d at 733 (noting that the "stated purposes of the UCCJEA include avoiding jurisdictional competition between courts of different states" and "discouraging continuation of controversies over child custody") (citations omitted). Notably, at least one Mexican court has ruled that Mexico was in the best position to determine the best interests of the child.

S.W.3d at 741. In other words, the laws of Mexico, the habitual residence of the child, are the laws to be examined when determining a breach of the rights of custody and because the Texas court's amended final order has not been properly adopted by any Mexican court, the petitioner's rights under Mexican law are not governed by it.[12]

Even assuming that Texas did not lose jurisdiction over the parties, at the very least, Mexico has concurrent jurisdiction because all the parties, including the child, reside in Mexico. Indeed, the Mexican courts affirmatively determined that they had jurisdiction over the parties. Moreover, even assuming *arguendo* that the Texas court retained continuing and exclusive jurisdiction over the parties, the petitioner would still have rights of custody under the October 21, 2011, order which granted the parties joint parental rights. While subsequent orders from January and February of 2012 purportedly modified the October 21, 2011, amended final order, this Court is of the opinion that those orders were entered in violation of the Due Process clause of the federal Constitution and the Hague Convention on service of process.

Under the Hague Service Convention, signed by both Mexico and the United States, a Mexican national, like the petitioner, can be served with a foreign proceeding in Mexico only through the Central Authority of Mexico. *See* Hague Service Convention, arts. 2-5; *In re J.P.L*, 359 S.W.3d 695, 706-707 (Tex.App.-San Antonio 2003, no pet); *see also Nuovo Pignone*, *SpA*, 310 F.3d 374, 383 (5th Cir. 2002). Here, there is no evidence in the record that the respondent served the suits that resulted in the latest Texas orders modifying parental rights in accordance with the Hague Service Convention. Therefore, those orders are unenforceable. *See In re J.P.L*, 359 S.W.3d at 707 (the claimant failed to establish that he properly served the defendant through Mexico's Central Authority, as required by the Hague Service Convention); *Compass Bank v.*

---

[12] Of course, even under the amended final order from the 410th District Court of Montgomery County, Texas, the parents have joint parental rights.

*Katz*, No. 5:12-cv-00045, 2012 WL 4889942, at *4 (S.D. Tex. Sept. 27, 2012 (under the Hague Service Convention, "service through Mexico's Central Authority is the exclusive method of service of process on parties in Mexico"; any other methods of service, even under the federal rules of procedure, that are in contravention to the Convention, which is a treaty with superior authority, cannot be recognized); *see also Nuovo Pignone*, 310 F.3d 383.[13]  Therefore, the only standing and valid order from the Texas court is the amended final order from October 21, 2011, which, as noted, granted the petitioner and the respondent joint parental rights.  Hence, under Texas law, the petitioner still has rights of custody.  Accordingly, since the Texas state court order designated Mexico as the child's residence, and specifically required that the child not travel outside of Mexico without consent of the parents, the respondent breached the petitioner's rights of custody under Texas law and, of course, also under Mexican law, when he removed the child to the United States, admittedly, without the petitioner's permission.

C. **The petitioner Was Exercising Her Rights of Custody Prior to the Child's Removal From Mexico**.

Finally, the Court concludes that the petitioner has established by a preponderance of the evidence that she was exercising her rights of custody prior to the child's removal from Mexico.  The Fifth Circuit has noted that it is "relatively easy" to show that a petitioner was exercising her rights of custody, either jointly or alone, or would have exercised them but for the removal or retention.  *See Larbie*, 690 F.3d 295.  In this case, the evidence establishes that the petitioner, as the primary custodian of the child in Mexico, regularly exercised her rights of custody, including, *inter alia*, taking the child to school and providing for his welfare.

---

[13] Although Article 19 of the Hague Service Convention seems to provide for an alternative method of service, the respondent must demonstrate that the "service of process method employed in this case complied with the internal law of Mexico providing for the service of documents coming from abroad." *In re J.P.L*, 359 S.W.3d at 706.  The respondent has failed to make such showing.

### D. THE RESPONDENT HAS FAILED TO ESTABLISH ANY DEFENSE.

The respondent argues that returning the child to Mexico would expose him to a grave risk of harm because the petitioner has demonstrated an intention to withhold the child from him and she may flee to other countries with the child. The Court has discretion not to return the child if the petitioner can establish, by clear and convincing evidence, *inter alia*, that "there is a grave risk that [the] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Convention art. 13 (b); *Sealed Appellant*, 394 F.3d at 343, 346. The evidence fails to support the respondent's claim about the petitioner and, moreso, appears to describe the respondent's conduct and demeanor throughout the proceedings in Mexico and Texas. Therefore, the Court is of the opinion that the respondent's self-serving statements and speculations are not enough to establish his defense by clear and convincing evidence. *See Altamiranda Vale*, 538 F.3d at 587 (noting that the clear and convincing evidence burden is "demanding" and the respondent failed to meet that burden).

## V. THE EXPENSES INCURRED BY THE PETITIONER

Pursuant to 42 U.S.C. 42 § 11607(b)(3) and Article 26 of the Convention, and the petitioner's pleadings, the Court ORDERS the respondent to pay the reasonable expenses incurred by or on behalf of the petitioner, including court costs, legal fees, and the transportation costs related to the return of the child to Mexico. The petitioner shall file a motion, supported by an affidavit in this regard, within ten days of this Order. The respondent shall file any response within five (5) days of the petitioner's motion. The parties have posted bonds to insure appearances in this Court. Those bonds are released by this Memorandum Opinion and Order. As well, the passports for the child, held by the Court, are released to the petitioner to effectuate the child's return to Mexico.

## VI.     CONCLUSION

Based on the foregoing discussion and analysis, the Court HOLDS that the petitioner has established that the respondent wrongfully removed the child from Mexico and, therefore; ORDERS that the child be returned to Mexico, instanter.

It is so **ORDERED**.

SIGNED on this 14th day of January, 2013.

_____
Kenneth M. Hoyt
United States District Judge